# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3552

_____

Sandra J. Chronister,

      Appellant,

v.

Unum Life Insurance Company
of America,

      Appellee.

\*
\*
\*
\*  On Appeal from the United States
\*  District Court for the Eastern
\*  District of Arkansas
\*
\*
\*
\*

_____

Submitted: December 12, 2008
Filed: April 30, 2009

_____

Before MELLOY and BENTON, Circuit Judges, and MAGNUSON,[1] District Judge.

_____

MAGNUSON, District Judge

Appellant Sandra J. Chronister appeals the District Court's grant of summary judgment in favor of Appellee Unum Life Insurance Company of America ("Unum"). For the reasons that follow, we reverse.

_____

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota, sitting by designation.

Sandra Chronister was employed as a nurse at Baptist Health in Arkansas. In 1995, she was injured in a car accident, and thereafter sought disability benefits under Baptist Health's long-term disability plan, which was insured and administered by Unum. Unum initially granted her application for disability benefits. At Unum's urging, Chronister also applied for, and received, social security disability benefits. After 24 months, however, Unum informed Chronister that it was terminating her benefits under the "self-reported symptoms" limitation of the plan. Chronister exhausted her administrative remedies and then brought suit. The district court ultimately determined that Unum's decision to deny Chronister benefits based on the self-reported symptoms limitation was not supported by substantial evidence. The court remanded the matter to Unum with directions to re-open the administrative record and make a new determination.

Both parties appealed that decision. See Chronister v. Baptist Health, 442 F.3d 648 (8th Cir. 2006) ("Chronister I"). As relevant to the current appeal, the panel determined that the appropriate standard of review for Unum's decision to deny Chronister benefits was the abuse-of-discretion standard used by the district court. Chronister argued that a less-deferential standard applied because (1) Unum operated under a financial conflict because it both makes the claim determination and pays the claim, and (2) Unum failed to consider Chronister's social security disability award and did not obtain Chronister's records from the Social Security Administration. Id. at 654. In determining that Chronister had not established that a less-deferential review was required, the Court found that Chronister had "failed to demonstrate any connection between the alleged procedural irregularities and the substantive decision reached." Id. at 655.

After remand, Chronister contends that Unum did not timely determine her claim. She therefore moved the district court to reopen the case. Several days later, Unum denied Chronister's claim. Unum determined that Chronister could perform sedentary work and was therefore not disabled from performing any occupation, as

required by the disability insurance plan. Chronister amended her Complaint and the parties proceeded to assemble the administrative record and cross-move for summary judgment. The district court, applying an abuse-of-discretion standard, granted Unum's motion for summary judgment, affirming its decision to deny Chronister's claim for disability benefits.

Chronister now argues that the Supreme Court's recent decision in Metropolitan Life Ins. Co. v. Glenn, 128 S. Ct. 2343 (2008), requires a less-deferential standard of review for Unum's decision on remand. In response, Unum contends that the law of the case mandates the use of an abuse-of-discretion standard. The question before the Court is whether Glenn changed the way courts should review Unum's decision.

There is no doubt that Glenn changed ERISA review in some ways. First, the Supreme Court determined specifically that when the entity that administers the plan "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket" a conflict of interest exists. Glenn, 128 S. Ct. at 2346. Prior to Glenn, this Court held the opposite. See, e.g., Chronister I, 442 F.3d at 655 ("[I]t is wrong to assume a financial conflict of interest from the fact that a plan administrator is also the insurer.") (quoting McGarrah v. Hartford Life Ins. Co., 234 F.3d 1026, 1030 (8th Cir. 2000)).

Similarly, under this Court's pre-Glenn precedent, a financial conflict of interest would not trigger less-deferential review unless the claimant could show that the conflict was causally connected to the specific decision at issue. See Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998); McGarrah, 234 F.3d at 1030. Glenn makes clear that, while a causal connection might be important in determining the appropriate level of scrutiny for a plan administrator's decisionmaking, such a connection is not required. Glenn, 128 S. Ct. at 2351 ("The conflict of interest . . . should prove more important . . . where circumstances suggest a higher likelihood that

it affected the benefits decision . . . .").  Under <u>Glenn</u>, courts must analyze the facts of the case at issue, taking into consideration not only the conflict of interest, but also other factors that might bear on whether the administrator abused its discretion.[2]  <u>Id.</u>

In sum, the Supreme Court found in <u>Glenn</u> that the abuse-of-discretion standard remains the appropriate standard to evaluate an ERISA fiduciary's decision.  That standard, however, requires a court "to determine lawfulness by taking account of several different, often case-specific, factors, reaching a result by weighing all together."  <u>Glenn</u>, 128 S. Ct. at 2351.  The Supreme Court's instruction differs from the manner in which this Court has applied the abuse-of-discretion standard in ERISA cases by, for example, eliminating the causal connection requirement, and in that regard constitutes a change in the law.  <u>See, e.g.</u>, <u>Jones v. Mountaire Corp. Long Term Disability Plan</u>, 542 F.3d 234, 240 (8th Cir. 2008) (remanding to district court for reconsideration in light of <u>Glenn</u>); <u>Champion v. Black & Decker (US) Inc.</u>, 550 F.3d 353, 355 (4th Cir. 2008) (noting that after <u>Glenn</u> the court "must take a new approach" to evaluating conflicted plan administrator's decisions).

This Court's post-<u>Glenn</u> decision in <u>Wakkinen v. Unum Life Ins. Co. of Am.</u>, 531 F.3d 575 (8th Cir. 2008), is not to the contrary.  The <u>Wakkinen</u> panel noted that <u>Glenn</u> did not announce a change in the ERISA standard of review, but rather instructed lower courts to continue to review administrator's decisions for an abuse of discretion, considering the conflict as one factor to determine whether the administrator abused its discretion.  <u>Wakkinen</u>, 531 F.3d at 581.  Notably, the Court

---

[2]  We are not faced with determining whether <u>Glenn</u> changes the discovery limitations in ERISA cases.  <u>See, e.g.</u>, <u>Hogan-Cross v. Metro. Life Ins. Co.</u>, 568 F. Supp. 2d 410, 415 (S.D.N.Y. 2008) (finding that <u>Glenn</u> "rejected special procedural or evidentiary rules and . . . thus abrogated the limitations on discovery unique to ERISA cases . . . .").  As discussed further below, the evidence in the administrative record, in addition to the documented history of biased claims administration, provides ample support that Unum's financial conflict of interest motivated Unum's decision to deny Chronister's claim.

did not decide whether the causal connection requirement imposed by previous decisions still applied post-Glenn. The Court ultimately determined that all of the facts of the case, taken together, failed to show that the administrator abused its discretion in denying the claim. Id. at 584.

Here, there are several factors that point to an abuse of discretion in Unum's handling of Chronister's claim. First is Unum's financial conflict of interest, which during the time of Chronister's initial application for benefits led to a "disturbing pattern of erroneous and arbitrary benefit denials, bad faith contract misinterpretations, and other unscrupulous tactics." Radford Trust v. First Unum Life Ins. Co., 321 F. Supp. 2d 226, 247 (D. Mass. 2006). The Supreme Court itself commented on Unum's " history of biased claims administration." Glenn, 128 S. Ct. at 2351 (citing John H. Langbein, Essay, Trust Law as Regulatory Law: The Unum/Provident Scandal and Judicial Review of Benefit Denials Under ERISA, 101 Nw. U. L. Rev. 1315, 1317-21 (Spring 2007)). Unum's history of arbitrarily denying claims such as Chronister's is another factor that the Court must consider in determining whether Unum abused its discretion in denying Chronister's claim. See Glenn, 128 S. Ct. at 2351 (noting that a conflict of interest should be more important in cases where the insurer has "a history of biased claims administration").

Other evidence also indicates an abuse of discretion under the circumstances of this case. Most egregious is Unum's failure to follow its own claims-handling procedures[3] with respect to the determination of the Social Security Administration ("SSA") that Chronister was disabled and therefore entitled to Social Security

---

[3] These procedures were put in place pursuant to settlement agreements and consent decrees between Unum and various state insurance commissioners and the Department of Labor after investigations into Unum's claims-handling practices. See Wakkinen, 531 F.3d at 582.

Disability Insurance ("SSDI") benefits.[4] Unum's claims manual unequivocally requires Unum to give "significant weight" to the SSA's disability determination and to reject that determination only if there is "compelling evidence" that the decision is (1) legally erroneous or an abuse of discretion, (2) inconsistent with the medical evidence, (3) inconsistent with the insurance policy's definition of disability, or (4) "[t]here is other evidence that clearly shows that the claimant is not disabled." (Pl.'s Mem. in Supp. of Mot. for Summ. J., Ex. E at 2.)

More importantly, however, the manual provides that, should Unum's disability determination differ from that of the SSA, Unum "must [] articulate the reason and analysis [based on the four factors listed above]; and [] support that reason and analysis with reference to facts and information in the claim file documentation." (Id.) In its January 19, 2007, letter denying Chronister's claim on remand, however, Unum nowhere mentions the SSA's determination that Chronister was disabled. Nor does the letter perform the analysis required by the claims manual. There is no explanation of why the SSA's disability determination was not entitled to significant weight in Chronister's case, and no attempt by Unum to support its unstated decision to reject the SSA's determination with reference to any facts in Chronister's claim file. It appears from the denial letter that Unum did not consider the SSA's disability determination at all. This is contrary to the clear dictates of Unum's claims-handling policies, and is a factor weighing in favor of a finding that Unum abused its discretion in its denial of Chronister's remanded claim.

_____

[4] Unum urges us to follow Chronister I's determination that Unum's failure to consider the SSDI award did not mandate less-deferential review. Chronister I, 442 F.3d at 655. That decision, however, found that Chronister had failed to show a connection between the alleged procedural irregularity and the benefits decision. Id. Under Glenn, such causal connections are not required. Moreover, Unum's claims manual regarding SSDI determinations was not in place during the initial determination of Chronister's 1997 benefits application, and it does not appear that the Chronister I panel was aware of the manual's requirements in any event.

Weighing all the evidence, as <u>Glenn</u> requires, the Court is left with the firm impression that Unum's decision to deny Chronister's remanded claim was an abuse of the discretion given to Unum under the terms of the plan. Chronister urges us not to remand this matter for further proceedings, given that her benefits claims have been pending for more than a decade, and we agree that such a remand would needlessly delay the already long-delayed benefits payments.

Accordingly, we reverse the judgment of the district court and remand for the entry of judgment in Chronister's favor.

_____