# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 08-3830

———————

Carol Jones,                            *

                                     *

    Plaintiff - Appellant,       *

                                     *   Appeal from the United States

    v.                             *   District Court for the

                                     *   District of Minnesota.

Unum Provident Corporation,     *

                                     *

    Defendant - Appellee.       *

———————

Submitted: October 22, 2009
Filed: March 1, 2010

———————

Before LOKEN, Chief Judge, HANSEN and MELLOY, Circuit Judges.

———————

LOKEN, Chief Judge.

Carol Jones filed a claim for long term benefits under the group disability insurance policy issued to her employer by an affiliate of Unum Provident Corporation ("Unum"). After Unum denied the claim and Jones's appeal, she commenced this action for wrongful denial of benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"). See 29 U.S.C. § 1132(a)(1)(B). The district court[1] granted summary judgment dismissing her claim. Jones appeals, arguing Unum and the court erred in concluding that a lapse in coverage triggered the pre-existing

———————

[1] The HONORABLE JOAN N. ERICKSEN, United States District Judge for the District of Minnesota.

condition limitation in the prior group insurer's policy. Reviewing the grant of summary judgment *de novo*, we affirm. See Jessup v. Alcoa, Inc., 481 F.3d 1004, 1006 (8th Cir. 2007) (standard of review).

## I. Background

In January 2004, Jones was hospitalized for major depression and stopped working as a legal secretary with Fabyanske, Westra & Hart, P.A. She filed a claim for disability benefits under the firm's Group Long Term Disability Insurance Policy issued by Fortis Benefits Insurance Company ("Fortis"). Fortis found Jones disabled and began paying long-term disability benefits after a three-month qualifying period. Her treating psychiatrist, Dr. Paul Richardson, cleared Jones to return to work after June 7, 2004. Jones notified Fortis but advised that she disagreed with Dr. Richardson's decision and was seeking a different psychiatrist. Fortis suspended benefit payments on June 8, advising Jones it would review her eligibility and requesting additional medical information. Dr. Richardson released Jones to work part-time on June 28 and full-time on July 26.

Jones returned to work part-time on June 28. She scheduled initial appointments with two other psychiatrists, who refused to support her claim of continuing long-term disability without further investigation. She did not pursue follow-up appointments. She stopped working on July 15, and a new psychiatrist, Dr. John Heefner, supported her claim of continuing disability. Jones sent Fortis records from her visits to Dr. Heefner and the other psychiatrists. On August 26, Fortis notified Jones that it was denying her long-term disability claim for benefits after June 7, based on her failure to satisfy the test of disability in the Fortis policy. Jones did not appeal this adverse decision. She returned to work part-time on September 20, 2004, and began working full-time on October 4. Effective January 1, 2005, the Fabyanske firm changed group disability insurance providers from Fortis to Unum.

## II. The Claim at Issue

Jones stopped working in late February 2005, complaining of an infected dog scratch. The Fabyanske firm terminated her employment in mid-March. Later that month, Jones filed a long-term disability claim with Unum, based upon a recurrence of her major depression and other ailments. Unum denied the claim based upon the pre-existing condition clause in the Unum policy:

> In order to receive a payment you must satisfy the pre-existing condition provision under: 1. the Unum plan; or 2. the prior carrier's plan, if benefits would have been paid had that policy remained in force.

Unum first determined that Jones did not satisfy the Unum policy's pre-existing condition clause because she received psychiatric treatment within the three months prior to the effective date of the Unum policy, January 1, 2005, and her disability began during the first twelve months after the effective date of the policy. Jones does not challenge that decision. Rather, the dispute turns on Unum's application of the pre-existing condition limitation in the Fortis policy.

Like the Unum policy, the Fortis policy defined a pre-existing condition as one that was diagnosed or treated during the three months before the claimant became insured; it denied coverage "for any disability caused by a pre-existing condition" during the first twelve consecutive months of being insured under the policy. Unum initially determined that Jones's coverage under the Fortis policy lapsed on August 26, 2004, the date of Fortis's final decision that she was "no longer considered disabled." Because coverage did not resume until she returned to full-time work in October 2004, and because Jones received psychiatric treatment within three months prior to that date, Unum concluded that benefits would not have been paid under the pre-existing condition clause of the Fortis policy, had it remained in force. Jones appealed that decision under the appeal provisions of the policy.

Before resolving Jones's appeal, Unum contacted Fortis about the apparent lapse in coverage. The Fortis claims agent who handled Jones's prior disability claim opined that coverage lapsed on June 8. Unum sent Fortis a confirming letter. Unum also explained to Jones in a telephone conversation that her benefits were denied based on the Fortis policy, suggested that Jones contact Fortis, and noted that "our decision may change" if Fortis changed its position. Jones apparently contacted Fortis, because the Fortis agent called Unum again and confirmed that Jones fell out of an eligible class when her disability ended and she failed to return to full-time work. In denying the appeal on May 24, 2006, Unum's appeals department determined, consistent with the informal Fortis opinion, that Jones's coverage under the Fortis policy lapsed on June 8, 2004, the retroactive effective date of Fortis's August 26 decision that Jones was no longer disabled, and did not resume until she returned to work full-time in October.

In granting summary judgment, the district court concluded that Unum did not abuse its discretion in determining that Jones's coverage under the Fortis policy lapsed between June 8 and October 4, 2004:

> [T]he Fortis policy provides that a covered person's insurance ends when the person is no longer in an eligible class or when the person stops active work. Under the Fortis policy, eligible classes are defined in part to include active full-time employees, full-time means working at least thirty hours per week, and active work means working full-time for the policyholder at the employee's usual place of business. Fortis determined that Jones was no longer disabled as of June 8, 2004, and she first returned to full-time work at Fabyanske approximately four months later. Under these circumstances, the Fortis plan plainly provides that her insurance ended.

For the most part, we agree with this analysis. The Fortis policy provided that insurance coverage ends when a person "stops active work" or is no longer in an "eligible class," defined as being "an active full-time employee." Coverage for Jones

-4-

was not an issue while she was receiving long-term disability benefits. No doubt for this reason, the policy did not address the issue. The record suggests that the Fabyanske firm continued to classify Jones as a full-time employee who was on disability leave, and Fortis waived monthly insurance premiums for continued coverage. But what happened to that status when Jones recovered the ability to resume work?

We disagree with Unum and the district court on one aspect of the issue. We conclude that coverage continued when Jones returned to work part-time on June 28, 2004, consistent with Dr. Richardson's limited release-for-work and with long-term benefits suspended but not yet denied, just as coverage would continue for a full-time employee who is reduced to part-time work during a medical leave. Accord Weber v. GE Group Life Assur. Co., 541 F.3d 1002 (10th Cir. 2008); Tester v. Reliance Standard Life Ins. Co., 228 F.3d 372 (4th Cir. 2000). But here, Jones quit work entirely on July 15, contrary to Dr. Richardson releasing her for full-time work on July 26, and Fortis found her not disabled on August 26, retroactive for benefits purposes to June 7, 2004. In these circumstances, both Unum and the district court reasonably looked to the coverage provisions in the Fortis policy and concluded that her coverage lapsed. As of no later than August 26, Jones had stopped active work and was no longer in the eligible class of active full-time employees, defined as those who work at least thirty hours per week. The 2004 billing records reflect that Fortis waived premium payments for Jones until she was "added" as an employee after returning to full-time work in October, consistent with coverage having lapsed.

On appeal, Jones argues that her coverage under the Fortis policy began in April 2001, and there was no lapse in coverage in 2004 because her employer considered her a full-time employee on medical leave. The fact that Fortis terminated disability benefits, Jones asserts, "has no relevance" to continued insurance coverage. We disagree. Unlike individual disability insurance plans, employer-provided group plans condition coverage on the insured employer's relationship with an employee. Some

policies provide that insurance does not end until an employee is formally terminated, like the policy at issue in <u>Verlo v. Equitable Life Assurance Society</u>, 562 F.2d 1034 (8th Cir. 1977). But others provide narrower coverage. The Fortis policy provided that insurance ends when a person is no longer an active, full-time employee or stops active work, defined as working full-time. "Full-time" was defined as "working at least 30 hours per week." An employee who, like Jones, quit work for several months can hardly be called an active, full-time employee. <u>Accord</u> <u>Fink v. Union Cent. Life Ins. Co.</u>, 94 F.3d 489, 491 (8th Cir. 1996); <u>Irvine v. Reliance Standard Life Ins. Co.</u>, 2009 WL 2231681, at *1-*2 (D. Minn. July 24, 2009).[2]

Jones argues that a literal interpretation of the thirty-hour requirement would lead to absurd results, because any employee taking a day off for vacation, a holiday, or illness would lose coverage and be subject to the pre-existing condition provision upon returning to work. But neither Fortis nor Unum applied either policy in this extreme manner. For example, the Fortis billing records reflect that Fortis waived premiums -- rather than lapsing coverage -- while Jones received long-term disability benefits, and neither insurer took the position that Jones's coverage lapsed when she was absent from her full-time work for one week in November 2004 due to illness.

---

[2]Jones relies on <u>Reese v. Brookdale Motors, Inc.</u>, 567 N.W.2d 83, 87-88 (Minn. App. 1997), which held that an employee scheduled to work full-time was covered even though he never worked full-time. But the issue in <u>Reese</u> was when coverage began, not when it ended, and the plan at issue "did not specifically require that an employee be 'actively working' in order to be eligible." <u>Id.</u> at 87. <u>See also</u> <u>Lickteig v. Bus. Men's Assur. Co. of Am.</u>, 61 F.3d 579, 585 (8th Cir. 1995); <u>Granite v. Guardian Life Ins. Co. of Am.</u>, 544 F. Supp. 2d 833, 848 (D. Minn. 2008). Jones further argues that Unum's interpretation of the Fortis policy violated numerous Minnesota statutes. We decline to consider these issues because they were not raised in the district court nor included in her statement of issues on appeal. <u>See</u> <u>Al-Zubaidy v. TEK Indus., Inc.</u>, 406 F.3d 1030, 1037 (8th Cir. 2005).

Jones further argues that Unum erred by ignoring the Continuance of Insurance clause in the Fortis policy, which provided that the policyholder may continue coverage for a person unable to perform active work on account of a covered disability. Leaving aside the question whether this provision applied after Jones recovered from a long-term disability, the clause expressly provided that "[c]ontinuance must be based on a uniform policy, and not individual selection." Here, a human resources employee advised Unum that the Fabyanske firm had no "formal" leave of absence policy other than the Family and Medical Leave Act (FMLA). The record further reflects that the Fabyanske firm wrote Jones on August 13 asking if she would return to work. On September 3, Jones "stopped in to the office to say that she would be attempting to return to work on Wednesday, September 8." She later left a message stating she would not return to work on September 8. On this record, Jones failed to prove either that her employer requested continued coverage, or that she was eligible for continued coverage because the continuance, if implicitly requested, was based upon a uniform policy.

### III. Standard of Review

Because the policy granted Unum discretion "to determine your eligibility for benefits and to interpret the terms and provisions of the policy," the district court applied the familiar abuse-of-discretion standard in reviewing Unum's denial of Jones's claim. See Walke v. Group Long Term Disability Ins., 256 F.3d 835, 839 (8th Cir. 2001). Jones argues the district court erred in applying this standard of review.

Jones argues that Unum's decision is entitled to less deferential review because Unum operated under the financial conflict of interest present whenever an insurer both evaluates claims for benefits and pays granted claims. Under the Supreme Court's recent decision in Metropolitan Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2351 (2008), this conflict does not change the standard of review but *may* be relevant in determining whether the insurer abused its discretion, for example, "where an

insurance company administrator has a history of biased claims administration." Applying <u>Glenn</u>, we have noted that courts heavily criticized Unum for unfair claims practices in the decade ending in 2003. <u>See</u> <u>Chronister v. Unum Life Ins. Co. of Am.</u>, 563 F.3d 773, 776 (8th Cir. 2009); <u>Wakkinen v. Unum Life Ins. Co. of Am.</u>, 531 F.3d 575, 582 (8th Cir. 2008). But Jones filed her claim in 2005. Unum thoroughly investigated the claim, both initially and when Jones appealed, and its initial and final decisions were carefully reasoned. The district court did not err for this reason in applying the abuse-of-discretion standard.

Jones argues that, even if Unum had discretion to interpret its own policy, the district court erred in not reviewing *de novo* Unum's interpretation of the Fortis policy. This is an interesting issue of first impression. But Jones did not preserve the issue by raising it to the district court. Accordingly, we decline to consider it. <u>See</u> <u>Menz v. Procter & Gamble Health Care Plan</u>, 520 F.3d 865, 868 & n.6 (8th Cir. 2008). We note that the issue would be of little if any significance if the other insurer's policy was unambiguous. Only when the other policy is ambiguous will discretion to interpret it be significant. In such cases, a reviewing court may properly grant some deference when the ERISA administrator has sought advice from the other insurer as to the proper interpretation of its policy, as Unum did in this case.

Our decision in this case is not affected by the ERISA standard of review. Based on the extensive record compiled during Unum's thorough investigation, we conclude that coverage under the Fortis policy lapsed more than six weeks prior to Jones's return to full-time work in October 2004. Accordingly, her March 2005 disability claim was not covered because of the pre-existing condition clauses of the Unum and the Fortis policies.

The judgment of the district court is affirmed.

_____